## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Michael Meyers, (N74364),      )
                                 )
          Petitioner,     )
                                 )       Case No. 17 C 5687
       v.              )
                                 )       Hon. Charles P. Kocoras
                                 )
Randy Pfister, Warden,      )
Stateville Correctional Center,      )
                                 )
          Respondent.     )

## <u>MEMORANDUM OPINION AND ORDER</u>

Petitioner Michael Meyers, a prisoner at the Stateville Correctional Center, brings this *pro se* habeas corpus action pursuant to 28 U.S.C. § 2254 challenging his murder convictions from the Circuit Court of Cook County. The Court denies the petition on the merits, and declines to issue a certificate of appealability.

## I.    Background

The Court draws the following factual history from the state court record. (Dkt. 20.) State court factual findings, including facts set forth in state court appellate opinions, have a presumption of correctness, and Petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C § 2254(e)(1); *Tharpe v. Sellers*, 138 S. Ct. 545, 546 (2018); *Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citations omitted). Petitioner has not made such as showing.

Petitioner was one of seven men convicted of committing a double murder on November 9, 1989, at the Stateway Gardens housing project in Chicago. *Illinois v. Young*, 635 N.E.2d 473, 477 (Ill. App. Ct. 1994). The motive for the shooting was to avenge the sexual assault of A.W. *Id*. at 478. A.W. was the girlfriend of James Young, one of Petitioner's codefendants. *Id*. The

men who sexually assaulted A.W. were in a gang rival to Young's, and during the assault, one of her attackers, a man named Williams, demanded A.W. to tell him Young's location. *Id*. Williams threatened A.W. with a gun at one point during the assault. *Id*.

The assault of A.W. occurred two days before the murders. *Id*. Earlier in the day of the murders, A.W. and Young met at a friend's apartment at the Stateway Gardens. *Id*. At Young's request, A.W. identified her attackers to him. *Id*. Young, Petitioner, and three other men returned to the apartment at 10 p.m. that evening, shortly before the murders. *Id*. A.W. witnessed the men dressed in black and each was carrying a gun. *Id*. The men left the apartment and the shootings occurred shortly thereafter. *Id*. They returned to the apartment twenty minutes later with ski masks or stocking caps over their faces. *Id*. Young took the guns from the group, placing them in the apartment's radiator. *Id*.

Two eyewitnesses observed the killings. *Id*. at 477-78. Both testified that the assailants positioned themselves on the ground and first floor porches of the apartment building around 10 p.m. *Id*. The first victim, Dan Williams, approached the building from the street. *Id*. at 477. One of the witnesses heard Young yell toward Williams, "come here," and then "come here, motherfucker." *Id*. The second witness heard the "come here, motherfucker," but did not know who said it. *Id*. at 478. This second witness, who was a 12-year-old and a member of a gang rival to Young's, testified that he heard Williams respond, "I ain't have nothing to do with it." *Id*.

The two witnesses then saw the group of men shoot at Williams. *Id*. at 477-48. The first eyewitness identified Young as one of the shooters. *Id*. at 477. She was able to identify Young because he was wearing a baseball cap while the others had masks. *Id*.

2

The 12-year-old boy also testified that Young was wearing a baseball cap. *Id.* However, he identified all the shooters, including Petitioner, because, per the boy, the men's knit caps were pulled just above their eyes. *Id.* The boy said the men's faces were all uncovered, and he saw them in light from a range of either 10 to 35 feet depending on their positions immediately before the shooting. *Id.* at 478.

The boy admitted during cross examination that he told the police after the shooting that Young and the other men had pulled their caps completely over their faces. *Id.* He also testified before the grand jury that he could not see some of the men because he was on the building's second floor porch when the shootings occurred while those men were immediately below him on lower porches. *Id.*

The two eyewitnesses saw Williams flee towards an Illinois Institute of Technology ("IIT") research building that was directly across the street from the housing project. *Id.* at 447-48. The offenders continued to shoot at Williams, who fell dead in the IIT building's revolving doors. *Id.* Security personnel at the IIT building testified that shots directed at Williams came into the IIT building killing Thomas Kaufman, a security guard stationed inside the front door of the IIT building. *Id.* at 478.

The 12-year-old boy's mother also testified at trial. *Id.* at 477. She did not see the shooting, but did hear the gunshots from her apartment in the housing project apartment building. *Id.* She looked out her window following the shooting and saw at least five men walking from the scene. *Id.* She recognized Young and another man, and saw Young put a gun under his coat. *Id.*

3

Following his trial and convictions, Petitioner was sentenced to a mandatory life sentence. *Id*. at 485. His convictions and sentences were affirmed by the Appellate Court of Illinois, *id*., and the Supreme Court of Illinois denied his petition for leave to appeal ("PLA") on direct appeal. *Illinois v. Young*, Nos. 77146, 77332, 77351, 77359, 642 N.E.2d 1300 (Ill. Oct. 6, 1994) (Table). The state court also rejected Petitioner's postconviction petition. *Illinois v. Meyers*, No. 2016 IL App (1st) 142323 (Ill. App. Ct. Oct. 21, 2016) (affirming denial of postconviction petition); *Illinois v. Meyers*, No. 121697, 80 N.E.3d 5 (Ill. Mar. 29, 2017) (Table) (denying PLA on postconviction proceedings). Having completed his state court proceedings, Petitioner now brings the present habeas corpus petition in this Court.

## II.  Analysis

Petitioner alleges the following claims in the instant habeas corpus petition:

Claim One: Trial counsel was ineffective for failing to call Sherrie Parker as an alibi witness.

Claim Two: The prosecution violated discovery rules by failing to disclose pretrial statements made by A.W.

Claim Three: The state court erred in applying the doctrine of transferred intent.

Claim Four: The imposition of a mandatory life sentence violates the Eighth Amendment's prohibition on cruel and unusual punishment.

Claim Five: Due process violation in admitting a portion of a witness's grand jury testimony at trial.

Claim Six: A witness committed perjury during his trial testimony requiring the granting of a new trial.

Claim Seven: The trial court erred in admitting evidence of gang membership.

A.    Claim One:   Ineffective Assistance of Counsel Claim

Petitioner alleges his trial counsel, George Nichols, was ineffective for failing to call Sherrie Parker as an alibi witness at trial.   Petitioner raised the claim before the state court in his postconviction petition in 1995.  (Dkt 20-7, pg. 3.)  Due to a series of procedural issues and appeals in the postconviction proceedings irrelevant to the present claim, the state court did not conduct an evidentiary hearing on the postconviction claim until 2014.  (Dkt. 20-13, pg. 2.) Petitioner, Parker, Assistant Public Defender Timothy Leeming, Chicago Police Detective Edward Winstead, and Cook County State's Attorney Office investigator Brannigan testified at the 2014 hearing.  (Dkt. 20-7, pg. 4.)   Nichols was deceased by 2014.   *Id.*

Petitioner testified that he told Nichols that he was with Parker at her apartment at the time of the shootings.   *Id*. at 4.   Per Petitioner, they were in the hallway of Parker's apartment building when they heard the gun fire.   *Id*.   Parker confirmed Petitioner's testimony explaining he came to her apartment sometime before 10 p.m. that evening, and stayed for at least 30 minutes.   *Id*. at 5.   She recalled that it was dark outside at that time.   *Id*.   She said they heard the shots as they were leaving the apartment.   *Id*.

Parker claims that she did not meet with Petitioner's attorney prior to trial.   *Id*.   Someone spoke to her prior to Petitioner's trial, but she believes that person was not associated with Petitioner's attorney.   *Id*.   Parker received a subpoena to appear at Petitioner's trial, and she came to the courthouse and waited outside the courtroom, but never testified.   *Id*.   Parker explains she was willing to testify on Petitioner's behalf at trial.   *Id*.

Petitioner's alibi claim is contradicted by his post arrest statement to the police.   *Id*. at 6. Detective Winstead testified at the hearing that following his arrest, Petitioner explained he was a

bystander at the scene of the shooting. *Id*. Per Winstead, Petitioner stated he was buying marijuana when he saw his codefendants shoot Williams. *Id*. Although Petitioner denied involvement in the shooting, he never told Winstead about Parker as an alibi. *Id*.

The parties stipulated at the hearing that Assistant State's Attorney (ASA) Jerry Marconi, if called as a witness would testify that Petitioner also provided an account of the events to him similar to the statement provided to Winstead. *Id*. at 7. However, Petitioner's statements to the police and ASA following his arrest were not committed to writing, and no statement was introduced at Petitioner's trial. *Id*.

At the evidentiary hearing, Petitioner denied making the post arrest statements to Winstead or Marconi. *Id*. at 4. He instead placed himself at Parker's apartment and denied any involvement with the shooting. *Id*.

Brannigan interviewed Parker in both 2009, and again in 2013. *Id*. at 6. She told Brannigan in both interviews that she was with Petitioner at her apartment at the time of the shootings. *Id*. However, she admitted to Brannigan that she was probably doing drugs at the time of the shootings. *Id*. Parker conceded during the 2016 evidentiary hearing that she used drugs daily in 1989 when the murder occurred. *Id*.

Parker was also inconsistent regarding the time of the shooting in her statement to Brannigan. In the 2009 interview, she told him that Petitioner was with her at 3 p.m., and she remembered the shooting occurring while it was light outside. *Id*. In the 2013 interview, she related that the shooting took place at 7 p.m. *Id*. At the 2016 hearing, she explained she did not recall telling the investigators that the shooting took place earlier in the day, and reiterated that the shooting took place when it was dark, but she did not know the exact time. *Id*.

6

Assistant Public Defender Lemming was assigned to represent Petitioner in the postconviction proceedings in 2009. *Id*. at 7. He interviewed Parker who told him the shooting occurred at 3 p.m. *Id*.

The trial court, in denying the postconviction petition, found Petitioner and Parker lacking in credibility. Although Petitioner denied making a post arrest statement placing himself at the scene buying marijuana, the court noted that the record contained a pretrial motion to suppress that statement suggesting the statement did occur. *Id*. at 8. This led the trial court to conclude that Nichols was aware of Parker, but decided to not call her as a matter of trial strategy. *Id*.

In affirming the denial of the postconviction petition, the appellate court stated that there was "no question that Nichols was aware of Parker" as: (1) Petitioner testified he told Nichols about her; (2) Parker is listed as a potential witness in defendant's answer to discovery; and, (3) she was subpoenaed to appear at trial. *Id*. at 10. The state appellate court also concluded that Nichols' decision to not call Parker as a witness was a reasonable one of trial strategy. *Id*.

Moreover, the appellate court explained Nichols was clearly aware of Petitioner's statement to the police placing himself at the crime scene buying marijuana as he brought a pretrial motion to suppress the statement, and a motion in limine to bar the state's mention of Petitioner's purchase of marijuana at the trial. *Id*. at 11. The appellate court concluded it was a reasonable decision to not call Parker as a trial witness because her testimony likely would have led to the prosecution calling Detective Winstead and ASA Marconi as rebuttal witnesses with their testimony regarding Petitioner's statement placing himself at the crime scene. *Id*.

Turning to the merits of Petitioner's claim in this Court, his claim is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). The Court's review is of the state

appellate court opinion on direct appeal because that was the last state court to resolve the claim on the merits. *Harris v. Thompson*, 698 F.3d 609, 623 (7th Cir. 2012) (citing *Green v. Fisher*, 565 U.S. 34, 40 (2011); *Garth v. Davis*, 470 F.3d 702, 710 (7th Cir. 2006)).

Under the AEDPA, the Court may not grant habeas relief unless the state court's decision on the merits was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or the state court decision is based on an unreasonable determination of facts. 28 U.S.C. § 2254(d). "The AEDPA's standard is intentionally 'difficult for Petitioner to meet.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014); *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). This "'highly deferential standard [] demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

An ineffective assistance of counsel argument is governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate ineffective assistance of counsel, Petitioner must show both deficient performance and prejudice. *Premo v. Moore*, 562 U.S. 115, 121 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). The Court's review under *Strickland* is deferential, and applying *Strickland* under the AEDPA (which itself also requires deference) results in a double level of deference to the state court determination. *Knowles*, 556 U.S. at 123.

Petitioner cannot demonstrate that the appellate court's rejection of his claim was either contrary to, or an unreasonable application of, *Strickland* as the state court properly identified and applied the *Strickland* standard. The state appellate court properly set forth the controlling *Strickland* standard in its opinion. (Dkt. 20-7, pg. 12.)

Regarding the state court's application of *Strickland*, that court concluded that Petitioner's trial counsel made a strategic choice in not calling Parker as a witness. In reviewing counsel's performance, the Court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689). Counsel's strategic choices made after a thorough investigation of relevant law and facts are virtually unchallengeable, while choices made after less than a complete investigation are reasonable to the extent supported by professional judgment. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 690-91).

The state appellate court's conclusion that trial counsel's performance did not fall below the objective standard of reasonableness was not an unreasonable application of *Strickland*. The state court was correct in recognizing that trial counsel clearly had considered the issue of Petitioner's statement to the police by bringing a pretrial motion to suppress and motion in *limine*. It is reasonable for counsel to seek exclusion of a statement from Petitioner that places him at the scene of the crime, as only one of the two eyewitnesses identified him at the scene, and that eyewitness was a 12-year-old boy from a rival gang. As the state court properly recognized, calling Parker as a witness would undue this work by trial counsel as Parker's testimony that Petitioner was with her during the shooting would open the door to rebuttal witnesses regarding Petitioner's pretrial statement placing himself at the scene.

Moreover, Parker is far from a perfect witness. She admitted using drugs on a daily basis during the time period of the murder which would lead to cross examination about her ability to properly observe and recall information. Equally, she would later give inconsistent statements to investigators following up on her claim during the postconviction proceedings about the time of

day the murders occurred undermining her possible testimony even further.  In sum, the state court made a reasonable determination that trial counsel's decision to not call Parker was a proper exercise of trial strategy.

Petitioner also cannot demonstrate prejudice.  His burden is to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different."  *Strickland*, 466 U.S. at 694.  Parker's questionable alibi testimony does not change the fact that A.W. saw Petitioner possess a gun and dressed in dark clothing in the group with Young immediately before the shooting, and also that the 12-year-old boy witnessed Petitioner partake in the shootings.  Claim One is denied.

### B.      Claim Two:  Discovery Claim regarding A.W.'s Statements

The prosecution's original discovery tendered to Petitioner included A.W.'s statement to the police and her grand jury testimony: (1) denying any knowledge of the shooting; (2) claiming that she was with a cousin that night; (3) that she did not see Young until 5 or 6 a.m. on the morning after the shooting; and, (4) denied any knowledge of the other codefendants.  *Young*, 635 N.E.2d at 479.  A.W. was later relocated by the State.  *Id*.  Following her relocation, she told the police and prosecution the account implicating Petitioner, Young, and the other defendants that she later testified to at trial.  *Id*.  She explained that she made her prior statements out of fear of Young and the other gang members.  *Id*.

Petitioner argues that the prosecution failed to disclose in the tendered discovery A.W.'s recantation of new statements given to the police and prosecution prior to trial.  Furthermore, the prosecution did not disclose prior to trial that the police promised A.W. that she would not be prosecuted for perjury if she testified to these new version of events at trial.

10

The state court's resolution of these issues on direct appeal were under Illinois Supreme Court Rule 412 and 415(b). *Young*, 635 N.E.2d at 479. A claim that a state court erred in application of state law is non cognizable in a federal habeas corpus proceeding. *Estelle v. McGuire*, 502 U.S. 62 (1991); *Johnson v. Acevedo*, 572 F.3d 398, 402 (7th Cir. 2009) ("As for the fact that the prosecution did not perform its obligations in discovery, a violation of state law is not the basis for federal collateral review.").

Petitioner invokes *Brady v. Maryland*, 373 U.S. 82 (1963), in his instant habeas corpus petition, (Dkt. 1, pg. 5.) and Respondent answers the claim under *Brady* despite the fact that the state court appears to have resolved the claim on the basis of state law. (Dkt. 19, pg. 15-17.) There is no reference to *Brady* by the state court, and the only mention of the Constitution is a fleeting reference in one sentence that Petitioner's claim is based on both Illinois Supreme Court Rule 412 and 415(b), and due process and fundamental fairness guarantees of the Fourteenth Amendment. *Young*, 635 N.E.2d at 479. Unfortunately, Petitioner's brief on direct appeal is not included with Respondent's answer (Dkt. 20.) despite being required by Rule 5(d) of the Rules Governing Section 2254 Cases, so the Court cannot determine whether Petitioner raised a federal constitutional claim to the state court on this issue.

Consequently, the Court shall proceed with the issue as framed by the parties as a *Brady* claim. Proceeding under *Brady* is a more favorable path to Petitioner as it is cognizable in a federal habeas corpus proceeding while a state discovery rule claim is not. Whether this is a non cognizable state law claim or *Brady* claim is not outcome determinative to the case so the Court will not consider it further.

To demonstrate a *Brady* violation, Petitioner must show that there is: (1) evidence

11

favorable to the accused, either exculpatory or impeachment; (2) the evidence was suppressed by the state either willfully or inadvertently; and, (3) prejudice resulted. *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (internal quotation marks and citations omitted); *Brady*, 373 U.S. at 87. "The strain of *Brady* relevant here is *Giglio v. United States*, 405 U.S. 150 (1972), which extends *Brady's* holding about exculpatory evidence to material impeachment evidence." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 600-01 (7th Cir. 2019) (internal quotation marks and citation omitted).

The state court rejected Petitioner's claim on direct appeal explaining Petitioner became aware of the challenged information through A.W.'s trial testimony, and then was able to address the issues through cross examination. *Young*, 635 N.E.2d at 479. This is a proper application of *Brady*. *See United States v. Brown*, 822 F.3d 966, 974 (7th Cir. 2016) (quoting *United States v. Knight*, 342 F.3d 697, 706 (7th Cir. 2003) ("Even when evidence material to the credibility of government witnesses is made available as late as trial, there is no *Brady* violation as long as the defense has 'an appropriate opportunity to incorporate that information into their cross-examination.'"). Claim Two is denied.

### C. Claim Three: Transferred Intent Claim

Petitioner argues that the state court violated due process by misapplying the transferred intent doctrine when both the intended victim (Williams), and unintended victim (Kaufman), were murdered. The appellate court on direct appeal explained that Illinois law applies the transferred intent doctrine when a defendant in his efforts to kill one person, inadvertently kills another. *Young*, 635 N.E.2d at 481. Respondent is correct that this claim is non cognizable because Petitioner is challenging an application of Illinois law. *Bradshaw v. Richey*, 546 U.S. 74, 76

12

(2005) (per curiam) (explaining that a state court's ruling on transferred intent involves a question of state law that is non reviewable by a federal habeas corpus court).

It is true that a violation of state law implicates the federal due process right to a fair trial when the state court error is so egregious as to "render it likely that an innocent person was convicted . . . ." *Perruquet v. Briley*, 390 F.3d 505, 510 (7th Cir. 2004). Petitioner cannot meet this standard because there is no error of state law in this case.

"'Under the doctrine of transferred intent, if a defendant shoots at one person, with the intent to kill, but kills an unintended victim, he may be convicted of the crime of murder for the death of the unintended victim.'" *Illinois v. Carisle*, 35 N.E.3d 649, 663 (Ill. App. Ct. 2015) (quoting *Illinois v. Thompson*, 730 N.E.2d 118, 123 (Ill. App. Ct. 2000)); *see also United States v. Marzano*, 160 F.3d 399, 400 (7th Cir. 1998) (setting forth transferred intent standard). This case is a straightforward application of transferred intent.

Petitioner's view is there cannot be transferred intent when the target of the shooting was also killed. This focus is too narrow. It is true that Petitioner and his cohorts succeeded in murdering their intended target, Williams. But, in their effort to kill Williams, their stray bullets also killed Kaufman. Petitioner's intent to kill Williams transfers to his killing of Kaufman. There is no error on this point. Claim Three is denied.

### D.    Claim Four:   Eighth Amendment Claim

Petitioner alleges that the imposition of a mandatory sentence of life imprisonment violated his Eighth Amendment right against cruel and unusual punishment.[1] Respondent is correct that this claim is procedurally defaulted.

---

1 *Miller v. Alabama*, 567 U.S. 460 (2012) (mandatory life sentence without possibility of parole juvenile offender violates Eighth Amendment), and *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016) (recognizing *Miller* as

To preserve a claim for federal habeas corpus review, a prisoner must fairly present the claim by setting forth the operative facts and applicable law to the state courts. *Johnson v. Hulett*, 574 F.3d 428, 431 (7th Cir. 2009). The claim must be presented through one complete round of state court review, including a PLA before the Supreme Court of Illinois. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845-46 (1999); *Weaver v. Nicholson*, 892 F.3d 878, 886 (7th Cir. 2018).

This claim was resolved by the state appellate court on direct appeal, *Young*, 635 N.E.2d at 642, but was not included in Petitioner's direct appeal PLA, (Dkt. 20-2.) and was not raised via the postconviction proceedings. (Dkt. 20-7, pg. 3.) Petitioner failed to present the claim through one full round of state review, thus resulting in its procedural default.

Petitioner cannot excuse his defaults through either cause and prejudice, nor fundamental miscarriage of justice. Regarding cause and prejudice, cause is an "'objective factor, external to Petitioner that impeded his efforts to raise the claim in an earlier proceeding.'" *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (quoting *Smith v. McKee*, 596 F.3d 374, 382 (7th Cir. 2010)). Examples of cause include: (1) interference by officials making compliance impractical; (2) the factual or legal basis was not reasonably available to counsel; or, (3) ineffective assistance of counsel. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *McCleskey v. Zant*, 499 U.S. 467 (1991)). The first two types of cause are not applicable to this case.

Ineffective assistance of counsel also does not excuse the default. An ineffective assistance of counsel argument asserted to excuse a default must, itself, be properly preserved in the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Smith v. Gaetz*, 565 F.3d 346,

---

retroactive in collateral proceedings), are inapplicable to the instant claim as Petitioner was an adult at the time of the offense.

352 (7th Cir. 2009). Petitioner has not exhausted any ineffective assistance of counsel argument to excuse the default of this claim.

Although ineffective assistance of counsel is a single claim, *Pole v. Randolph*, 570 F.3d 922, 934 (7th Cir. 2009) (citing *Peoples v. United States*, 403 F.3d 844, 848 (7th Cir. 2005)), Petitioner must raise the particular factual basis for each aspect of the alleged ineffective assistance of counsel allegation to preserve the respective argument. *Pole*, 570 F.3d at 935 (citing *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007)). "A bare mention of ineffective assistance of counsel is not sufficient to avoid a procedural default; [Petitioner] must have 'identified the specific acts or omissions of counsel that form the basis for [his] claim of ineffective assistance.'" *Johnson v. Hulett*, 574 F.3d 428, 432 (7th Cir. 2009) (quoting *Momient-El v. DeTella*, 118 F.3d 535, 541 (7th Cir. 1997)). "Petitioner cannot argue one theory [of ineffective assistance of counsel] to the state courts and another theory, based on different facts, to the federal court." *Johnson*, 574 F.3d at 432 (citing *Everett v. Barnett*, 162 F.3d 498, 502 (7th Cir. 1998)). The fact that the ineffective assistance of trial counsel claim in Claim One is properly exhausted does not excuse Petitioner's default of his instant claim.

This leaves the fundamental miscarriage of justice (actual innocence) gateway to excuse Petitioner's default. To show actual innocence to defeat a default, Petitioner must demonstrate that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggins v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). This is a "demanding" and "seldom met" standard. *McQuiggins*, 569 U.S. at 386 (citing *House v. Bell*, 547 U.S. 518, 538 (2006)). Petitioner must present new, reliable evidence that was not presented at trial --- such as exculpatory scientific

evidence, trustworthy eyewitness accounts, or critical physical evidence --- to make a credible claim of actual innocence. *House*, 547 U.S. at 537 (citing *Schlup*, 513 U.S. at 324); *see McDonald v. Lemke*, 737 F.3d 476, 483-84 (7th Cir. 2013) (quoting *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("[A]dequate evidence is 'documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who places him out of the city, with credit card slips, photographs, and phone logs to back up the claim.'")). Petitioner cannot meet this standard as there was an eyewitness who identified him as one of the shooters, and a second eyewitness who said he was armed and with the group of assailants immediately before the murder. Petitioner cannot excuse his default.

Finally, beyond the default, the claim is also meritless. The Supreme Court has found that life sentences for lesser crimes are constitutional. *Harmelin v. Michigan*, 501 U.S. 957, 996 (1991) (rejecting Eighth Amendment challenge to life sentence for possession of more than 650 grams of cocaine by first time offender); *see also United States ex rel. McNary v. Hardy*, No. 10 C 5185, 2011 WL 2415030, at *7 (N.D. Ill. June 9, 2011) (rejecting Eighth Amendment challenge by Illinois prisoner sentenced to mandatory life for double murder resulting from drunk driving).

### E.  Claim Five:  Admission of Witness' Grand Jury Testimony

Petitioner challenges the introduction of the 12-year-old witness's grand jury testimony during trial as the introduced testimony contained prior consistent statements implicating Petitioner in the murders.[2]  Respondent is correct that this claim is procedurally defaulted. Like

---

2 This claim was not properly preserved at trial, and the state appellate court considered the issue under Illinois's plain error standard. *Young*, 635 N.E.2d at 484.  Petitioner's failure to properly preserve the claim at trial could result in a procedural default as an adequate and independent state ground for review. *Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010).  Respondent, however, did not raise this procedural default argument, but instead raised a different procedural default argument.  As the Court is resolving the default on the ground asserted by Respondent, it need not consider whether Respondent waived the adequate and independent ground of decision argument. *See Kaczmarek v. Rednour*, 627 F.3d 586, 593 (7th Cir. 2010).

in Claim Four, this claim was raised before the appellate court on direct appeal, but not in the direct appeal PLA. (Dkt. 20-2.)

Petitioner concedes that he did not bring the claim in his direct appeal PLA, but counters that he did raise the claim in a PLA in his postconviction proceedings. (Dkt. 25, pg. 5.) A prisoner must present his claims to the correct state court at the proper time in order to properly exhaust them. *Lewis v. Sternes*, 390 F.3d 1019, 1026-28 (7th Cir. 2004). Following the state appellate court's consideration of his claim on direct appeal, he was required to bring his claim in his direct appeal PLA to preserve it. Failing to do so results in the default, and bringing the claim in the postconviction PLA does not excuse his failure.

Additionally, Petitioner did not exhaust the claim through his postconviction proceedings because he did not raise this claim in his postconviction petition. (Dkt. 20-2, pg. 3.) Raising a claim for the first time in the postconviction proceedings in the PLA does not exhaust the claim either. *Castille v. Peoples*, 489 U.S. 346, 351 (1989). The claim is procedurally defaulted, and as previously explained in Claim Four, Petitioner cannot excuse his default through either cause and prejudice nor fundamental miscarriage of justice.

Finally, beyond the default, Petitioner's claim is meritless. Evidentiary rulings raise non cognizable issues of state law, and only implicate due process concerns if they result in the conviction of an innocent person. *Perruquet*, 390 F.3d at 510. The Court sees no due process concerns in light of the strength of the evidence against Petitioner. Claim Five is denied.

### F.     Claim Six:   Perjured Testimony Claim

Petitioner alleges that the 12-year-old boy who identified him as one of the shooters committed perjury. The foundation of the claim is an allegation that the boy later recanted his

testimony. One of Petitioner's codefendants, James Bannister, successfully brought a postconviction petition on the basis of actual innocence in light of the boy's recantation. *Illinois v. Bannister*, 923 N.E.2d 244, 246 (Ill. 2009). Bannister was retried and convicted a second time. *Id*. at 247. The main witness at the second trial was Michael Johnson, one of the accomplices, who testified pursuant to a plea agreement. *Id*. Johnson provided testimony at the second trial consistent with what had been presented at the first trial. *Id*. at 248. Notably for this case, Johnson names Petitioner as one of the men responsible for the killings. *Id*. Like Bannister, Petitioner also brought an actual innocence claim in his postconviction proceedings regarding the 12-year-old's recantation, but his claim was denied. (Dkt. 20-7, pg. 3.)

Respondent is correct that Petitioner did not raise the present perjured testimony claim at any time before the state courts. Petitioner raised a different claim asserting actual innocence before the state court, but that is insufficient as a prisoner must raise both the operative law and facts for his claim. *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006). As Petitioner never raised a perjured testimony claim in the state courts, that claim is procedurally defaulted before this Court.

Equally, Petitioner cannot demonstrate cause and prejudice, nor fundamental miscarriage of justice. Regarding fundamental miscarriage of justice, any issue regarding the boy's recantation is cured by the fact that Johnson implicated Petitioner in the killings, and also A.W.'s testimony implicating Petitioner. Claim Six is denied.

### G. Claim Seven: Introduction of Gang Affiliation Evidence

Petitioner's final claim is that the trial court erred in allowing the introduction of gang affiliation evidence at his trial. Like in Claims Four and Five, this claim was raised before the

appellate court on direct appeal, but not in the direct appeal PLA. (Dkt. 20-2.) Thus, this claim is procedurally defaulted, and as explained above, Petitioner cannot excuse his claim through either cause and prejudice, nor fundamental miscarriage of justice.

Finally, beyond the default, Petitioner's claim is meritless. Evidentiary rulings raise non cognizable issues of state law, and only implicate due process concerns if they result in the conviction of an innocent person. *Perruquet*, 390 F.3d at 510. There is no evidentiary error because the state appellate court correctly recognized that the gang evidence was admitted for the permissible purpose of explaining the motive for the crime. *Young*, 635 N.E.2d at 635-36; *see also Monroe v. Davis*, 712 F.3d 1106, 1121 (7th Cir. 2013) (recognizing that gang affiliation evidence was "highly relevant" to why offender was angry with, and would want to harm, the victim); *Illinois v. Johnson*, 803 N.E.2d 405, 433-34 (Ill. 2003) (holding that gang affiliation evidence is admissible to provide motive for shooting). Claim Seven is denied. The habeas corpus petition is denied on the merits.

## III.    Certificate of Appealability and Notice of Appeal Rights

The Court declines to issue a certificate of appealability. Petitioner cannot make a substantial showing of the denial of a constitutional right, namely that reasonable jurists would not debate, much less disagree, with this Court's resolution of Petitioner's claims. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

Petitioner is advised that this is a final decision ending his case in this Court. If Petitioner wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Petitioner need not bring a motion to reconsider this

Court's ruling to preserve his appellate rights. However, if Petitioner wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

## IV. Conclusion

Petitioner's habeas corpus petition (Dkt. 1, 5.) is denied on the merits.   Any other pending motions are denied as moot.   The Court declines to issue a certificate of appealability.   The Clerk is instructed to: (1) terminate Respondent Randy Pfister and replace him with Petitioner's current custodian, David Gomez, Warden, Stateville Correctional Center; (2) alter the case caption to *Meyers v. Gomez*; and, (3) enter a judgment in favor of Respondent and against Petitioner.   Civil Case Terminated.

ENTERED:

Dated: 8/13/2019

CHARLES P. KOCORAS
United States District Judge